**In re George C. STEIN and Jeanette M. Stein, h/w, Debtors.**

**George C. STEIN and Jeanette M. Stein, h/w, Plaintiffs,**

**v.**

**UNITED STATES FARMERS HOME ADMINISTRATION, Defendants.**

**Bankruptcy No. 82–00175 T.
Adv. No. 82–0302.**

United States Bankruptcy Court,
E. D. Pennsylvania.

April 14, 1982.

---

Joseph S. U. Bodoff, Philadelphia, Pa., for plaintiffs.

Peter F. Vaira, Philadelphia, Pa., for defendants.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

This matter comes before us on a debtors' application for authority to use cash collateral. The application was opposed by a creditor which objected that it would not be adequately protected by the lien provisions proposed by the debtors. For reasons hereinafter given, we will grant the debtors' application.[1]

The debtors, George C. Stein and Jeanette M. Stein, operate a farm in Berks County, Pennsylvania. The Farmers Home Administration (hereinafter, Fm. H.A.) holds liens on the debtors equipment and livestock securing six loans to the Steins having a total balance of $226,428.28 as of January 15, 1982, the date on which the Steins filed their petition under Chapter 11 of the United States Bankruptcy Code. The liens are secured as follows:

(a) first lien position on debtor's equipment, crops, and livestock and the products and proceeds therefrom, having a value of $168,550.00;

(b) second lien position on equipment value at $24,750.00 as to which Allis Chalmers Corporation holds a first lien, securing indebtedness of $57,000.00.

In addition, FmHA is the assignee of a milk contract between the Steins and Lehigh Valley Farmers under which FmHA has been receiving $4500.00 a month on its loans. The Steins' application requests full use of the milk assignment for operational costs during the Chapter 11 proceedings.

In reviewing an application under 11 U.S.C. § 363 which provides for the use of cash collateral, the Court must balance two irreconcilable and conflicting interests. The holder of a lien on cash collateral must not be left unprotected by unrestricted use of the collateral by the debtor. However, the purpose of Chapter 11 is to rehabilitate debtors and generally, access to cash collateral is necessary in order to operate a business. The equities in each case must be weighed in striking a balance. *Matter of Earth-Lite, Inc.* 9 B.R. 440 (Bkrtcy., M.D. Fla.1981); *In re International Horizons, Inc.,* 11 B.R. 366 (Bkrtcy., N.D.Georgia 1981). The authority to grant the use of cash collateral carries with it a concomitant responsibility to insure that the value of the creditor's security is not impaired. 11

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

U.S.C. § 361 sets forth, in non-exclusive terms, some examples of methods of providing adequate protection to a creditor by requiring the trustee to make periodic cash payments or by providing an additional lien where the use under § 363 results in a decrease of the value of the creditor's security.

In the case before us, FmHA is undersecured at the present time. The evidence presented at the hearing in this matter established that the value of the livestock and crops securing FmHA's liens is increasing as the herd continues to reproduce and the crops are harvested. The equipment is depreciating, if at all, at a much slower rate. Debtors require the use of their cash proceeds from the dairy sales in order to meet operational costs. FmHA is secured by the products and proceeds of the Stein's farming business and their secured position can only be enhanced by the continued operation of the farm. The disparity between the present value of the security and FmHA's liens is approximately $58,000.00. However, we agree with our colleague, Judge Pelofsky, in his reasoning in *In re Heatron, Inc.* 6 B.R. 493 (Bkrtcy., W.D.Miss. 1980), "[T]he Court is not obligated to protect the creditor better than it did itself when making the loan and obtaining security." supra at 496. We conclude that FmHA was not adequately protected previous to the filing of the Chapter 11 petition. The continued lien on the Stein's crops, livestock and equipment results in an increase rather than a decrease in collateral. In balancing harm to FmHA against the Stein's need for cash collateral in order to operate, we are persuaded by the above facts and the Code's policy favoring rehabilitation that the cash proceeds of the milk assignment should be made available to the debtor.

In order to safeguard the security which FmHA does have, we will require the Steins to make detailed financial reports to the FmHA and allow FmHA access to their record books and premises for reasonable inspections.